UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

 v.              Case No. 04-cr-278-pp

DANTE N. COLEMAN,

    Defendant.

---

**ORDER DENYING DEFENDANT'S *PRO SE* LETTER MOTION REQUESTING EARLY TERMINATION OF SUPERVISED RELEASE (DKT. NO. 107)**

---

  On March 21, 2005, the defendant pled guilty to one count of being a felon in possession of a firearm, one count of knowingly possessing with intent to distribute cocaine base and one count of knowingly carrying a firearm during and in relation to a drug offense. Dkt. Nos. 10, 11. On November 23, 2005, Judge Charles N. Clevert, Jr. sentenced the defendant to serve 120 months on the first count, 262 month on the second count to run concurrently with the sentence on the first count and a state-court sentence, and sixty months on the third count, to run consecutively to the sentences imposed on the first two counts, for a total sentence of 322 months—twenty-six years and ten months. Dkt. Nos. 27, 28. Judge Clevert imposed a sentence of ten years of supervised release to follow this sentence. Id.

  On May 11, 2007, the Seventh Circuit Court of Appeals issued an order vacating that sentence and remanding for resentencing. Dkt. No. 46. On April 9, 2008, Judge Clevert re-sentenced the defendant to serve 120 months on the

1

first count, 180 months on the second count to run concurrently with the sentence imposed on the first count, and sixty months on the third count to run consecutively with the sentences imposed on the first two counts, for a total sentence of 240 months—twenty years. Dkt. Nos. 50, 51. Judge Clevert followed the new sentence by a term of eight years of supervised release. Id. The defendant appealed that sentence, dkt. no. 52, but the Seventh Circuit dismissed the appeal, dkt. no. 64.

In 2019, this court granted the defendant's motion under the First Step Act to reduce the sentence he received on Count Two. Dkt. No. 101. The court vacated Judge Clevert's second sentence and imposed a determinate sentence of 154 months—twelve years and ten months—which the court believed would result in the defendant's immediate release. Id. at 4. The court also imposed a sentence of six years of supervised release. Id. at 5.

The defendant did, in fact, begin his term of supervised release on May 21, 2019. Dkt. No. 111 at 1. That was three years, eight months and eleven days ago. On May 23, 2022, however—about three years into the defendant's six-year supervised release term—the court received a report from the probation department. Dkt. No. 103. That report indicated that as early as January 7, 2020—less than eight months into his supervised release term—the defendant had missed an appointment with his supervising probation officer, and that he'd missed a total of five appointments since beginning his supervised release term. Id. at 2. The report also indicated that in August 2021, the defendant had submitted a urine sample that tested positive for

marijuana. Id. Those violations, however, paled in comparison to the report's indication that on May 18, 2022, the defendant had been arrested by Milwaukee police officers on charges of being a felon in possession of a firearm (one of the offenses for which he was convicted back in 2005), resisting/obstructing an officer and causing soft tissue injury and disorderly conduct. Id. at 1. As of the date of this order, those charges are pending against the defendant in Milwaukee County Circuit Court. State v. Dante Noha Coleman, Case No. 2022CF1966 (Milwaukee County Circuit Court), (available at https://wcca.wicourts.gov/). There is a federal detainer on the defendant; he filed a motion asking this court to lift the detainer, dkt. no. 104, which the court denied, dkt. no. 106.

On January 19, 2023, the court received from the defendant the instant motion for early termination of supervised release. Dkt. No. 107. The defendant argues that when, in 2019, his appointed lawyer filed a motion to reduce his sentence under the First Step Act, that lawyer should have objected to the fact that the defendant's original presentence investigation report characterized him as a career offender under §4B1.1, when under the law in 2019, he would not have been characterized as such. Id. at 1-2. He argues that because his counsel did not object to the 2005 presentence investigation report on this basis, he was erroneously designated as a career offender and that this court sentenced him as a career offender. Id. at 1-3.

The defendant argues that because he already has been released from prison, the only "relief" the court can give him for this "error" is to terminate

his supervised release early. Id. at 3. He also argues that although the Guide to Judiciary Policy established a presumption of early termination once a defendant has served eighteen months of supervised release, he cannot benefit from that presumption because "it's said" that he qualifies as a career offender even though the law says otherwise. Id.

The court will deny the defendant's motion for a couple of reasons. First, he is incorrect that his appointed lawyer failed to argue that he would not qualify as a career offender in 2019. His lawyer *did* argue that if the defendant had been sentenced in 2019, he would not qualify as a career offender because one of his predicate offenses—fleeing—no longer qualified as a career offender predicate under the intervening case law. Dkt. No. 92 at 7. Counsel urged the court to calculate the defendant's guidelines as if he'd been sentenced in 2019, and argued that if the court did so, the defendant's resulting guideline range—taking into account the mandatory minimum sentence on the 18 U.S.C. §924(c) charge—would be 130 to 147 months. Id. at 8. The court gave the defendant a sentence of 154 months—a year over the high end of the guideline range counsel urged. Dkt. No. 101 at 4.

Second, the defendant is under the impression that his appointed lawyer in 2019 could have raised a legal challenge to his 2005 classification as a career offender. It is not at all clear that he is correct. In June of 2018, the Seventh Circuit held that the Supreme Court's decision in <u>Johnson v. United States</u>, 576 U.S. 591 (2015)—which held that the residual clause of the Armed Career Criminal Act was unconstitutionally vague and violated due process—

4

Case 2:04-cr-00278-PP   Filed 01/31/23   Page 4 of 6   Document 112

applied retroactively to the residual clause of the career offender guideline, rendering that provision unconstitutionally vague. Cross v. United States, 892 F.3d 288, 307 (7th Cir. 2018). To the court's knowledge, the United States Supreme Court has not made the same determination. And while the Supreme Court has ruled that the Johnson decision applies retroactively to collateral challenges to cases that became final before Johnson was decided, Welch v. United States, 578 U.S. 120 (2016), the defendant's 2019 First Step sentence reduction motion was not a collateral challenge (a 28 U.S.C. §2255 motion to vacate, correct or set aside) to his 2005 classification as a career offender.

Finally, and most important, the defendant assumes that the only thing preventing him from early termination of his supervised release is his classification as a career offender. He is incorrect. It is true that Volume 8, Part E, §360.20(c) establishes a presumption of early termination after a person has served eighteen months of his supervision, but only if he meets certain criteria. Even if the defendant is not a career offender, he does not meet some of the other criteria for early termination. Section 360.20(c)(1) requires that the person present "no identified risk of harm to the public or victims." The defendant was arrested while on supervised release; he was found with a firearm (which he was prohibited from possessing) and he injured one of the officers who tried to arrest him. Those facts indicate that as of the time of his arrest, the defendant presented a danger to the public. Section 360.20(c)(5) requires that the person be "in substantial compliance with all conditions of supervision." As the court has noted, the defendant missed multiple

5

appointments with his probation officer, tested positive for marijuana and has been charged with violations of state law. Finally, §360.20(c)(6) requires the person to have engaged "in appropriate prosocial activities" and to show that he receives "sufficient prosocial support to remain lawful well beyond the period of supervision." The defendant has demonstrated neither of these things.

Instead, he argues that because the law changed some thirteen years after he was convicted and he would not have been characterized as a career offender if he'd originally been sentenced in 2019, he is owed credit against his sentence. Because he has been released from custody, he argues that the only credit the court can give him is to terminate his supervised release early. That argument might have been persuasive if the defendant had fully complied with all the conditions of his supervision up to the time he filed his motion for early termination. He did not. He does not meet three of the six criteria required for the presumption of early termination to apply.

The court **DENIES** the defendant's *pro se* letter motion for early termination of supervised release. Dkt. No. 107.

Dated in Milwaukee, Wisconsin this 31st day of January, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**